May it please the court. Good morning. My name is George Bagnall from Melvin A. Myers. I'm together with my colleague, Sylvia Levine, a UCLA law student. We are acting as pro bono counsel for the appellant, David Lindsay. Ms. Levine and I will be splitting our time this morning with me handling the unconstitutionally excessive force used by Officer Kiernan and Ms. Levine. And I will also be answering any questions the panel may have on Heck v. Humphrey. And Ms. Levine will be handling the fact that the law was clearly established when Officer Kiernan acted in December 2006. Your Honors, this case boils down to essentially one question. Whether Officer Kiernan used unconstitutionally excessive force when he tased Mr. Lindsay twice in December of 2006. Is your point that the use of the taser gun or whatever is impermissible? Under the facts at issue in this case, yes, Your Honor. Well, it seemed from the, well, I'd better hear it from you, what you think the facts are. But it seemed to me that this person was drunk and had been told by the officer to just get in his car, get in the cab and go away. And no, he wanted to go back in there and straighten this out with the clerk where he'd wanted to buy the liquor. And was resisting the officer's orders. And then the officer told him he was going to use the taser if he didn't do what the officer wanted him to do. And he said something like go ahead or something like that. It was a strange kind of event. But it looked as if you must be arguing that the officer was not permitted under these circumstances to use the taser gun twice. We argue, sir, that certainly with respect to the second use that was definitely. Yes. Before second blast. Yes. But at that point, Mr. Lindsay was already laying on the ground and surrounded by seven officers when it was used. That was excessive under the circumstances. We also think that based on the law of the circuit, Officer Kiernan's decision to use the taser in the first instance was also excessive. The standards set up. How were they going to restrain him otherwise? Well, the most important factor that courts consider in excessive force cases is whether the suspect posed an immediate threat to the officers or others. And in this case, Mr. Lindsay posed no threat at all. Well, you see, he was close to that sliding. Here's the story. He attended I think his brother's wedding or some relative's wedding. He'd been drinking a lot that day. And he left the wedding in the cab. And on the way home, which was a distance away, he needed to use the bathroom. And it was raining. And the cab drove into this gas station. And he went in to one of these convenience stores that were part of the gas station. He had to use the bathroom. And he came out and he wanted to buy some alcoholic drink. And the young lady there said something about, well, you're drunk. I can't serve you. And he got people lined up behind him to pay. And he was arguing with her. And he was a big guy too, as I recall. Maybe 220 pounds, six foot or something. And so she called 911. And in the meantime, he went back into the cab. And he was ready to leave. And the police car showed up. And so he jumped out of the cab. And the officers came. Actually, I think it was another car, the police car that came. And they said, look, let's get back in the cab and go home. No, he wanted to straighten this thing out with this little 18-year-old girl. And he wanted to get the record straight. And he wanted them to come with him and mediate this thing. And so he barreled his way through a group of police officers who were there. And he was approaching the door to the convenience store when this police officer, who's the defendant here, asked him to stop. And he said, otherwise I'll tase you or use the taser. And he said something about, well, go ahead. You know, I guess fine with me. And it's one of these tasers that sends, I guess, a wire out and kind of sticks in you. You get a jolt. And then he fell to the ground. And he wanted to get up again. And they told him, just lie down there, put your hands behind your back, and they were going to handcuff him. But he wouldn't do that. And I think they told him once or twice, you better get down. And he wouldn't. So they tased him again. And they put the handcuffs on him. And they lifted him up and off he went. But that's about what happened. They told him to stop. He didn't want to stop. So there wasn't there some danger to this guy who was very kind of belligerent confronting this 18-year-old girl. You've got how many police did you have, five or six? Seven, Your Honor. Seven? Well, you had seven police. It's raining. You want them to get their uniforms wet down on the ground and come home? And their wives said, what happened to your uniforms? Well, I've got to get down there. Well, I'm joking about that. So how do you get a reasonable use of force out of that? Well, Your Honor, I see my time is expiring. I'm going to make sure that my colleague has an opportunity. Well, I think that in other cases that this Court has held that conduct on the part of a Section 1983 plaintiff that has been much more dangerous than Mr. Lindsay's, particularly in Smith v. Hemet, where just as here, the suspect and the plaintiff in Hemet attempted to reenter his house where the victim of the suspected domestic violence was and engaged in a prolonged struggle with the police officers, attempting to get back in the house and also resisting their attempts to arrest him. The plaintiff in that case was allowed to go forward on his 1983 case. Here, Mr. Lindsay, I think the video evidence here shows that, contrary to the way that the facts have been characterized in Officer Kiernan's brief, was not close to the doors. The video evidence shows that he was a number of feet away from the doors. And I think another important factor here is that officers can't allege that there was some imminent danger just abstractly. There has to be objective evidence of imminent danger. And here, on the video, the officers can be seen walking. Their body language never evidences any sort of imminent threat. They remain calm. They walk. None of the officers tries to stop. Counsel, does statute require filming? No, Your Honor. No, there was film here. Yes, it was. You were saying in every case they have to film? No, Your Honor. Okay. I missed it, and that's what I wanted to get. Thank you. What I meant to say was that here the incident was captured on film, and so we have objective evidence to show whether or not there actually was an immediate threat. This was police film? No, it was captured on the video tape of the service station. Correct. The audio was recorded by the police. And so there are two independent recordings that capture this, one video and one audio. And I see that we're almost entirely clear. It's a tough case. I don't want to slow you down. We're out of time, and I want to make sure. We're going to give you some time. Melbourne does a lot of pro bono work for the court and for other institutions, and we appreciate it. And part of what we do is we have a rule that if you're pro bono on one of these cases, we let you argue. So we want you to go away feeling good. Thank you, Your Honor. Go ahead. I think it's also important to keep in mind that this case was decided on summary judgment. And the real question in this, can a reasonable jury find from these facts that Officer Kiernan's use of force was unconstitutionally excessive? And on these facts with this video, even if this court determines that Officer Kiernan's first use of the taser was justified, with seven officers surrounding Mr. Lindsay laying on the ground, there was no need for Officer Kiernan to use his taser the second time. Even if Mr. Lindsay attempted to push himself up a little bit, the seven officers could have subdued him without resorting to such severe force. This court recently held in Bryan v. McPherson that tasers are a significant intermediate level of force and that the government interest must compel the use of that force against the suspect. That is certainly not the case with respect to the second application of the tasing, that there was nothing compelling that use. And that an officer, excuse me, that a suspect may not comply with every order that a police officer gives them does not justify the officer's use of such a severe amount of force. And the other factors at issue here, whether the severity of the crime and whether the suspect attempted to avoid arrest by flight or engage in active resistance, Mr. Lindsay was suspected of being intoxicated and refusing to leave. That crime does not warrant the use of such severe force. Mr. Lindsay did not attempt to flee. That is indisputable. He testified in his deposition that when he saw that the police officers arrived at the police station, he asked his driver to stop the taxi, waited for the officers to approach his car, and when they approached, he got out and spoke to them. You can see on the video that Mr. Lindsay raised his hands, told them that he had nothing to hide, described the contents of his pockets. The officers knew almost immediately that he wasn't armed. There's no evidence that he was armed. And this court, again, in Brian D. McPherson, held that resistance is not a binary state but rather a continuum from no resistance at all to aggressive resistance toward a police officer. Mr. Lindsay? This was the first time this officer ever used a taser. Is that right? I believe that that was in the record below. Yes. And finally, there were seven officers present here that could have worked together to use a less severe amount of force. With seven officers present, as again, as this court held in Brian D. McPherson, additional officers reduced the need to use such severe force. And I thank you for giving me the extra time. I'd like to turn to my colleague, Ms. Lee. Good morning, Your Honors. May it please the court, Sylvie Levine from UCLA Law School, for Appellant David Lindsay. Officer Kiernan is not entitled to qualified immunity because the law was clearly established prior to December 9, 2006, when Officer Kiernan tased Mr. Lindsay at the gas station. We know that the law was clearly established from three sources. First, the preexisting case law. Second, the fact that the gram factors all weighed against using the type of force that Officer Kiernan did. And third, that Officer Kiernan was on notice from his training that the use of force implemented on December 9th was unreasonable. And I'll address those in turn. First, the preexisting case law. In January of 2005, nearly two years before Officer Kiernan tased Mr. Lindsay, this court held in an en banc opinion in Smith v. Hemet that Mr. Bagnall just addressed, that police officers are not permitted to use force when a suspect is not a threat, even if that suspect is not fully compliant with officers' commands. Since that time, this court has held that the law was clearly established in both cases. In a tasing that took place in the summer of 2005, the Ninth Circuit held in Bryan v. McPherson that the law was clearly established and denied those officers qualified immunity. The same is true that a district court found that a tasing that took place in June of 2006, still five months before Officer Kiernan tased Mr. Lindsay, that the law was clearly established at that time. So then we look to the gram factors that Mr. Bagnall just addressed. This court held in Bryan v. McPherson that when an officer's conduct so clearly offends an individual's constitutional rights, that alone is sufficient to determine that a right is clearly established. In this case, because the gram factors weigh in favor, weigh against the use of force, that alone could put the officers on notice, would put a reasonable officer on notice. Well, some force was required here, and your co-counsel there indicated that it was particularly the four-second blast from the taser. The second usage of that was excessive force. So you're not contending force was unnecessary. You're contending the amount of force used was unreasonable, isn't that? Yes, Your Honor. Absolutely. Is that because it was a taser gun that was used? Yes, Your Honor. It's that a taser gun was used in contrast to the circumstances of this particular case. And what should the officers have done other than use the taser gun? Well, for example, the officers, as they have in some other cases, used a control hold against Mr. Lindsay. I don't know exactly what the officers should have done instead, but I think that Officer Kiernan doing a reasonability analysis of the incident with him, that there's a presence of gasoline, that Mr. Lindsay's unarmed, altogether should have put a reasonable officer on notice that deploying the taser into Mr. Lindsay, and particularly deploying the taser into Mr. Lindsay the second time, was unreasonable. And like I said, this Court in Bryan v. McPherson said that when that reasonability analysis tends to weigh against the use of force, that alone clearly establishes the law and that an officer should be denied qualified immunity for that reason. The element you missed from your analysis is the degree of resistance. Was he subservient or was he belligerent? Your Honor, I think he was in between those two things. Although this Court has held that belligerence and bad attitude is not sufficient. I didn't say attitude. I said belligerence. I believe that this Court in Winteraud held that belligerence alone is not sufficient to justify a use of force. But more than that, just as the suspect in Smith v. Hemmock did put up some resistance and was not fully compliant with the officer's commands, as your Honor is right, Mr. Lindsay was not fully compliant with all the instructions issued by Officer Kiernan, but that still doesn't allow reasonable use of a taser. And third, we look to the fact that Officer Kiernan was on notice from his training at the Santa Paula Police Department that the use of a taser in this situation would be unreasonable. This Court held in Drummond that when an officer is on notice from his training materials, that can be a part of the reasonability analysis that the Court undertakes. I'm sorry. I didn't pick this up from the briefs. How was he on notice that using the taser gun under these circumstances would be unreasonable? Did they have a course where they gave him an example of this kind of situation? Yes, your Honor. The Santa Paula Police Department General Orders 8-3 and 8-8, both of which are included in the record below, on pages, I believe, 53 to 61, dictated that the severity of the offense should be considered when using a taser and that a taser should be used generally when a suspect is accused of a violent crime. The training materials also indicated that it was prohibited for officers to use their tasers in the proximity of flammable liquids or gases. And here we know that because they were at a gas station, there was flammable liquid nearby. For those reasons, we think that the training materials put Officer Kiernan on notice, the danger of using his taser in this situation, and further dictated that his actions were unreasonable. So for those three reasons, because of the preexisting case law, the gram factors, and the Santa Paula Police Department training materials, Officer Kiernan is not entitled to qualified immunity, and we ask that you reverse the finding of summary judgment. If you have further questions, I'm happy to answer them. Well, thank you very much. All right. Mr. Sarno. Good morning, Your Honors, and may it please the Court. Justin Sarno, appearing on behalf of the Defendant at the Lee, Officer Daniel Kiernan. Your Honors, this Court is respectfully requested to affirm the District Court's entry of summary judgment in favor of Officer Kiernan for three reasons. First, the District Court correctly held that Officer Kiernan's use of force was indeed objectively reasonable under the analysis set forth under Graham v. Connor and its progeny. Second, even if this Court held that a constitutional violation had occurred under the circumstances, the District Court correctly held that Officer Kiernan was entitled to the application of qualified immunity. And thirdly, Your Honors, time permitting, an independent procedural basis exists on the record to affirm summary judgment in this case to the extent that Appellant Lindsay's 1983 action is barred under the U.S. Supreme Court's decision in Heck v. Humphrey. Your Honors, with respect to the first point, in Graham v. Connor, and specifically in recently decided cases by this circuit, Bryan v. McPherson, Brooks v. City of Seattle, and Matos v. Aguevara, this Court has indeed focused on what was the most important and salient point in the Graham analysis, and that is what is the threat to the officer and what is the threat to other individuals? Looking at the record in this case, the undisputed material facts are clear. We have an instance in which Mr. Lindsay, at page 72 of the record, caused such a disruption in this convenience store that it motivated and precipitated a store clerk to independently summon the police. At that point, the officers have no idea what they're going to arrive and see at this particular location. And when the officers do arrive, we note that at page 80 and 99 of the Appellee's excerpts of the record, that Mr. Lindsay was actively resisting at every step of the process. Critically, in the video evidence that's before this Court, Mr. Lindsay is asked and requested by the officers to simply get in the cab and leave. And Mr. Lindsay said, no, I want to go clear this up. And while the appellant notes that there are five to seven officers present, clearly as the video footage depicts, those seven officers were unable to restrain him when he started marching towards the store. So it begs the question under Graham v. Connor, what other things could the officers have done under the circumstances? The appellant has posited some conjectural opinion that perhaps the officers could have done something else. But as Your Honor, Justice Pragerson indicated earlier, slightly in jest, the officers come home with a soiled uniform. Well, the more extreme result is that should the officers have dogpiled this individual? Should they have risked injury to other officers? The problem is that Mr. Lindsay, as indicated specifically throughout this record, and as identified clearly by the District Court, never complied during any point of the continuum. Now, specifically, I'd like to also address the appellant's contention that this case is somehow similar to the factual matrix that's set forth in Smith v. Hemet, a 2005 decision by this Court. First, Smith v. Hemet does not involve the use of a taser. Secondly, the Court's decision in Smith v. Hemet was eminently justified because the use of force was patently unreasonable under the circumstances. Yes, there was active resistance, but we also had the deployment of pepper spray four times in Mr. Smith's face, and presumably that wasn't enough, so the Court felt that it was unreasonable for the officers to then sic Kwon Do, a canine dog, to bite him three times in the neck and in the shoulder. Now, under the circumstances, that was clearly a situation in which the attempts to subdue the individual were met with a patently unreasonable use of force. Now, that leads to the second point, Your Honors, and with respect to the issue of qualified immunity. Under these facts, was Officer Kiernan's use of force so patently unreasonable under the circumstances so as to afford the inability of the application of qualified immunity? And I would submit that while this Court has offered various opinions on the use of force with respect to a taser in Bryan v. McPherson, later on in Brooks v. City of Seattle, and more recently in Matos, there's clearly a discrepancy in some regard as to the circumstances with which a taser should be used under varying circumstances. And that's an analysis that's undertaken through the framework and lodestone of Graham itself. So while Graham was decided in 1989, it only provides a workable framework. It doesn't provide us with a specific context of when a taser should be used in varying circumstances. And I take us back to the record, Your Honors. We have repeated instances of noncompliance. We know that Mr. Lindsay was not complying when the officers arrived. He brushed past the officers en route to the store. What was he going to do in the store? The officers have no idea at that moment. What are they supposed to do under the circumstances? He says he wants to clear it up. He may have a philosophical dispute with the store clerk, but the officers don't know that. You know, Mr. Sarno, that's — I think we've got those facts down pretty well. Indeed. I think the real problem is with this second use of the taser. Okay. And so maybe you could sort of move into that. Absolutely, Your Honor. And the problem with appellant's assertion with respect to the second use of the taser is that Mr. Lindsay continued to resist. After being tased the first time, we have a specific indication at page 93 of the record that Mr. Lindsay was getting up from the ground despite the officers saying, stay down, stay down, stay down. And this is specifically indicated in the video footage. So while the appellants may characterize it as a patently unreasonable second use of force under the circumstances, the problem is that Mr. Lindsay's behavior belies that contention. Mr. Lindsay, after having been tased, we know he's intoxicated, is still resisting. So the officers are in a precarious situation of not knowing what Mr. Lindsay is doing. There's also another fact that weighs on the second use of the taser. We don't know if Mr. Lindsay is secreting any type of weapons inside of his clothes. One interesting point of differentiation is in Bryan v. McPherson, Mr. Bryan was wearing only boxer shorts and tennis shoes. So the court pointed to the fact it was visibly apparent that he was unarmed. So the use of the taser was unreasonable under those circumstances. Here, Mr. Lindsay is wearing, quote, wedding clothes. The officers don't know if he has anything secreted. He may not have, but the point is that the officers just don't know. So to answer your question, Justice Thompson, the second use of the taser was justified and reasonable under the circumstances because of the level of continued resistance that Mr. Lindsay was displaying under the circumstances. The third point that I'd like to raise before this Court is also a factual matter with respect to what occurred here. In Bryan v. McPherson, we were dealing with a situation in which there was no warning before the deployment of the taser, and that mitigated against the finding of reasonableness under the circumstances. We have, as Justice Pragerson has noted previously, a specific directive in this case. Mr. Lindsay was told, we're going to deploy the taser. And he said the second use, he was told this? No. This was prior to the first. Yes, okay. But just as a factual matter and so that the Court appreciates all of the facts, incident and the totality of the circumstances, he was warned. And he said, I don't mind it. So that creates a major point of differentiation from the Bryan case. Is that what he said, I don't mind it? I don't mind it is the exact quote from the video footage, Your Honor, and I believe it is indicated at minute 332 of the video footage. The final point, Your Honors, is a procedural consideration, and that is the facts in this case, specifically the availability of the plea agreement at pages 116 and 120 of the Appellee's excerpts of record, provides a basis for which this Court can deduce that Mr. Lindsay was indeed convicted for resisting arrest under Penal Code Section 148A1. In Heck v. Humphrey, the U.S. Supreme Court indicated that a 1983 claim will be barred to the extent that it may, quote, imply the invalidity of the underlying state law conviction. What we have in Smith v. Hemet was a discussion of the application of Heck v. Humphrey, because in Smith, the individual in that case was also convicted for resisting arrest. But the Court decided in Smith not to apply Heck v. Humphrey because the Court was able to segregate temporarily the acts of resistance and then a subsequent use of force. In this case, as we see, the active resistance that occurred not only before the first use of the taser, but in between the first and the second uses of the taser, was active resistance on the part of Mr. Lindsay. For that reason, this case is materially distinguishable from Smith v. Hemet, because the use of force in this case indeed, I'm sorry, the act of resistance indeed precipitated the use of force, did not precede the use of force. I see that my time has expired, Your Honors. If there's any further questions, I would respectfully submit. We'll finish. Is there something that you'd like to tell us? I think I've exhausted the three points that I wanted to make before this Court. I feel good about the points that I made before this Court. And if there are any further questions on any of the three points. That's a good time to stop is when you feel good. Thank you very much for your time, Your Honors. I very much appreciate it. Thank you. All right. If we may, just a few points in rebuttal, Your Honors. May it please the Court. First, I want to reiterate that this case was decided on summary judgment. If that decision in Osterkind's favor was an error, if a reasonable jury could find in favor of Mr. Lindsay in this case here, particularly with respect to the second tasing, a reasonable jury could find that that use of force was excessive and summary judgment was improper for that reason. Second, there is no evidence in the record that Mr. Lindsay had any weapons. In fact, the only evidence in the record that has any relation to weapons is to the contrary, that Mr. Lindsay had no weapons. And finally, with respect to the Heck v. Humphrey argument, this Court held in Nanette v. Small that because when a 1983 plaintiff is no longer in custody, there's no case or controversy. And therefore, a habeas petition would be denied as moot. Mr. Lindsay is no longer in custody. He wasn't in custody when this was filed, and this Court can find that there is no heck bar for that reason. And in addition, just as in Smith v. Hemet, this case is split between the officer's lawful investigation and then a subsequent excessive use of force. Counsel, if this case were remanded for trial, what is in the record now that was not in the record then, the time it was heard? What could you add by testimony that hasn't been considered by the trial court? I'm not sure that – I don't know the answer to that question, Your Honor. Well, you want to go back and try the case because the record now is insufficient for us to make a decision, is the implication of what you're saying. And I want to know, what are we going to add to this case if we were to send it back? Your Honor, I – What's new? We're going to get a jury or something? What's going on? I would argue that the evidence in the record is sufficient for a jury to find in favor of Mr. Lindsay without the addition of – without adding the facts. Then we need not remand him. The record's complete, right? But the summary judgment was granted in favor of Officer Kiernan, and it – because the record has sufficient evidence for a jury to find in favor of Mr. Lindsay, summary judgment in favor of Officer Kiernan was improper. So the case should be remanded for trial on the facts and evidence. What are the disputed issues of fact? Did Mr. Lindsay pose a threat? Was Officer Kiernan's use of force unconstitutionally excessive? In Smith v. Hemet, this Court reiterated the longstanding rule in this circuit that excessive force cases are inherently factually dependent, and therefore, summary judgment should be granted only in the most rarest of circumstances because the jury has to assess the facts and make a determination as to whether or not the use of force was excessive under the circumstances. The record evidence in this case is sufficient for a jury to find in favor of Mr. Lindsay, and therefore, granting summary judgment in favor of Officer Kiernan was an error. Okay. Thank you. All right. This matter will stand submitted. I appreciate the good arguments on both sides. Yeah, I'd like to comment. I think all three of you just gave exceptionally good arguments. It's a pleasure to hear fine lawyers such as yourselves argue these cases. Thank you. Thank you very much. Thank you. We demonstrate that there's hope for the future. All right. Let's see. The next one is Herod v. Gribner.
judges: Pregerson, Beezer, Thompson